IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

2020 MAR 27 AM 9:59

IVAN BOYD,

    Plaintiff,

vs.

Case No.: 20-cv-288-wmc

Prison Officials: D. BELLIN,
LONG, MS. "K", TOM LARSON, BARTER,
JOHN DOE NURSE, J. GARCIA, S. KLENKE,
LABBY and HILDEBRAND,

    Defendants.

## CIVIL COMPLAINT UNDER 42 U.S.C § 1983
### (JURY TRIAL DEMANDED)
**PLAINTIFF CERTIFY AND VERIFY INFORMATION HEREIN IS TRUE AND CORRECT UNDER PENALTY OF PERJURY**

### SUMMARY OF CASE

    Plaintiff, IVAN BOYD, alleges that throughout the timeframe of December 12, 2019 to approximately December 27, 2019 he was wrongfully denied proper accommodation such as (lower bunk restriction), to help assist with an already injured right arm. Plaintiff Boyd assert as a direct result of prison officials misconduct; caused him to fall from the top bunk on two separate occasions. During the course of both incidents Boyd sustained injuries which required medical attention. Plaintiff Boyd request that this honorable court allow him to pursue Eighth Amendment claims against each of the named defendants mentioned above.

### JURISDICTION

1.) This court has jurisdiction over this dispute pursuant to 28 U.S.C § 1331 and 1343(a)(3).

2.) Venue is the U.S. District Court for the Western District of Wisconsin is proper pursuant to U.S.C § 1391(b).

-1-

## PARTIES

3.) Plaintiff IVAN BOYD is and was at all times mentioned in this Complaint a prisoner of the State of Wisconsin in the physical custody of the Wisconsin Department of Corrections ("DOC"). He is currently confined at the Redgranite Correctional Institution ("RG-CI"), located at: 1006 County Road EE, (P.O. BOX 925), Redgranite, Wisconsin 54970.

4.) Defendant D. BELLIN (first name unknown) is a Registered Nurse ("R.N.") at RGCI.

5.) Defendant LONG (first name unknown) is a R.N. at RGCI.

6.) Defendant MS. "K" (first and last name unknown) is a Correctional Officer ("C.O."), at RGCI.

7.) Defendant TOM LARSON is a supervisor at RGCI.

8.) Defendant BARTER (first name unknown) is a R.N. at RGCI.

9.) Defendant JOHN DOE (first and last names unknown) is a R.N. at RGCI.

10.) Defendant J. GARCIA (first name unknown) is a R.N. at RGCI.

11.) Defendant S. KLENKE (first name unknown) is a R.N. at RGCI.

12.) Defendant LABBY (first name unknown) is a Medical Doctor at RGCI.

13.) Defendant HILDEBRAND (first name unknown) is a medical assistant at RGCI.

14.) All defendants have acted and continue to act under color of State law at all times relevant to this Complaint.

## STATEMENT OF FACTS

**15.)** At the time this civil Complaint was written, the Plaintiff in this case, Ivan Boyd, was a 39-year old 245 pound African American male; who suffered from multiple health issues such as: Obstructive sleep apnea; high blood pressure, and diabetes. It should be noted that Mr. Boyd receives treatment for each of these conditions.

**16.)** On December 12, 2019, at approximately 2:00 p.m., the institution offered a mass flu-shot drive located inside of the gymnasium. Plaintiff Boyd agreed to get the flu-shot, however, it shall be noted that on the questionnaire Boyd filled out prior to having this vaccine administered where it asked if recipient is allergic; Boyd stated that he was unaware.

**17.)** Later that same day December 12, 2019 at approximately 3:00 p.m., Plaintiff Boyd reported to the female C.O. who was on duty that he was feeling extreme pain and burning at the injection site and shooting surges of pain down the elbow. The C.O. asked if Boyd wanted her to call HSU on his behalf? Boyd stated yes...A short time later, the C.O. called Boyd down to the desk and explained that HSU staff informed her to tell Boyd to place a cold towel on his right arm and see how that works...Boyd complied with nurse's orders with continued pain.

**18.)** Later this same day still, at approximately 4:00 p.m., Boyd pressed his medical alert button inside of his cell in order to inform SGT. Nash that he was feeling extreme pain in the right arm and he could hardly move it...SGT. Nash said that she would contact HSU after dinner. At approximately 5:00 p.m., SGT. Nash informed Plaintiff Boyd that HSU staff told her that when they were ready to see Boyd they would call. Boyd was ultimately called down to HSU a short time later and examined by R.N. D. Bellin. Nurse Bellin examined Boyd's arm and said that there was nothing to worry about due to the fact experienci-

ng stiffness, discomfort or pain was normal based on the reality that the flu-shot/vaccination was administered directly in the muscle. Bellin stated to contact HSU again if Boyd continued to feel pain after 1-day. Boyd was given a bottle of over-the-counter pain releiver and encouraged not to worry.

**19.)** On December 13, 2019 at approximately 7:00 a.m., Plaintiff Boyd pressed his medical alert button and explained to C.O. Ms. K. that his right arm hurt and that he'd been feeling this pain ever since he received the flu-shot the day before. Boyd explained that he had taken over-the-counter pain releiver and used a cold compress on his arm as instructed by medical staff, but nothing seemed to work. Ms. K. explained that Boyd should give it at least another day before notifying HSU because everytime she had received the flu-shot she experienced pain and stiffness as well...She said that it was totally normal and if she called HSU they would simply tell her the same thing. That same night Boyd also submitted an HSR to HSU explaining the situation concerning flu-shot complications; the pain, and the fact that he had difficulty extending his arm. On December 14, 2019 R.N. Long responded stating verbatim: "It will be sore for approximately one week, this is within normal limits." (See: HSR dated 12-13-19, EX. 1).

**20.)** During the early hours of December 14, 2019 at approximately 12:00 a.m., Boyd pressed his medical alert button and informed third shift offbers that he was feeling burning and shooting pain in his right arm as well as stinging where he had received the flu-shot. Third shift informed Boyd that he would contact the "white shirt" (supervisor), and the on-call nurse. About 30-minutes later, the third shift officer got back on Boyd's intercom informing him to get dressed and come down to the SGT.'s station. When Boyd arrived at the officer's

-4-

station he was met by supervisor Tom Larson. Larson inquired into the situation concerning Boyd's complaints. Plaintiff Boyd informed Larson that his right arm hurt so bad that he was unable to sleep and that he had been suffering from this pain and discomfort ever since he had received the flu-shot/vaccination on December 12th. Larson explained that he would like for Boyd to raise both sleeves up so that he could examine both arms...Boyd complied to the best of his ability due to the fact he could barely move his right arm. Larson told Boyd to have a seat in the dayroom and that he was waiting to hear back from the on-call nurse so that they could determine what to do. Approximately 10-15 minutes later, supervisor Tom Larson asked Boyd what was his pain level on a scale from one through ten, ten being the greatest... Boyd stated that his pain was currently at a 10. Larson asked Boyd if he thought he could make it through the night if he made sure that HSU saw Boyd that next morning right out-of-the-gun at 7:30? Boyd informed Larson that he would really like to be seen at that exact time due to the level of his pain; but that if he absolutely had to wait 'til morning to be seen by a medical professional, then he had no other choice. It should be noted that Plaintiff Boyd tossed and turned that entire night due to his pain. Boyd also submitted an HSR dated 12/15/19, explaining situation concerning flu-shot complications/pain. **See: HSR dated 12/15/19; EX. 2.**

21.) On December 15, 2019 despite what supervisor Larson stated the previous night about Boyd being seen first thing in the morning, Boyd was called down to HSU at approximately 1:30 p.m. When Boyd was finally called to HSU, he was examined by R.N. Barter and a new male nurse. Boyd was examined and informed R.N. Barter and this John Doe nurse that the previous night he tossed and turned all night due to

-5-

his severe pain and that he ended up sleeping in his chair because he nearly fell attempting to get into the top bunk. Although R.N. Barter and the John Doe nurse failed to ensure that Boyd was issued a bottom bunk to assist with his injury; Barter stated that Boyd should use a warm compress...It may be important to note that Boyd was not provided with the supplies needed to utilize compress. <u>See:</u> Memo from HSU, dated 12/16/19; EX. 3.

22.) Between the dates of December 16, 2019 and December 18, 2019 Plaintiff Boyd was seen and examined by R.N. Garcia. Boyd explained that the pain in his right arm was getting worse not better. Boyd explained that he was having problems entering his top bunk due to the pain and mobility issues. A sling was provided to Boyd to wear on his right arm and R.N. Garcia provided more over-the-counter pain reliever however, she failed to ensure Boyd was permitted a lower bunk accommodation to assist with Boyd's injury. <u>See:</u> HSR dated 12/18/19, which supports Boyd's position that medical staff was in fact aware of his complaints; EX. 4.

23.) On December 19, 2019 at approximately 10:30 p.m., Boyd was attempting to enter his top bunk (while wearing his medically issued sling), and fell backward into the desk injuring his neck; lower back and re-injurying his right arm. Plaintiff Boyd experienced excruciating pain as he lay on the floor unable to get up. First responder C.O. members arrived at Boyd's cell and rendered aid. <u>See:</u> Various Incident Reports written by prison staff who were involved; EX. 5.

24.) Boyd was taken to the local emergency room (E.R.), for treatment. Boyd was given medication to address his severe pain, X-rays was also taken. The treating doctor explained to Boyd that after reviewing his blood work there were elevated levels of (CK) creatine kinase; which is an enzyme released into the bloodstream following

-6-

injury to the brain or muscle tissue. See: Relevant hospital discharge papers; EX. 6.

25.) The next day, December 20, 2019 after returning to the institution from the hospital, Boyd was called down to HSU and seen by R.N. Klenke and DR. Labby. Klenke took Boyd's vitals and explained that DR. Labby wanted to speak to Boyd concerning some information that was contained in his discharge papers from the E.R. DR. Labby explained to Plaintiff Boyd that his blood work that was taken at the hospital showed an elevated level of (CK), which was an enzyme released into the bloodstream following an injury to the brain and or muscle tissue. Labby stated that she wrote another order for more blood work to be completed the following week to determine if the levels were lowered. Lastly, DR. Labby mentioned that Boyd's blood count was slightly lower than they would like to see. Labby told Boyd that hopefully his pain would diminish after a couple of days; she told Boyd to continue taking the acetaminophen prescribed by the E.R. doctor and to be careful not to fall again with the sling and all.

26.) On December 21, 2019 Boyd forwarded HSU another HSR stating that he was in constant pain from his initial fall. See: HSR dated 12/21/19; EX. 7.

27.) On December 22, 2019 Boyd forwarded HSU another HSR explaining the situation concerning his arm/flu-shot and the fact HSU staff failed to respond correctly. See: HSR dated 12/22/19; EX. 8.

28.) On the night of December 26, 2019 Plaintiff Boyd was attempting to exit his top bunk (while in sling), and fell again for the second time. As a result of this fall Boyd struck his right knee on the ladder attached to the bunk bed. Immediately Boyd's knee swelled and he felt extreme pain which caused him to walk with a slight limp. On December 26, 2019 Plaintiff Boyd forwarded another HSR to HSU in-

-7-

forming them of the incident. See: HSR dated 12/26/19; EX. 9

29.) The next day on December 27, 2019 Plaintiff Boyd was called down to HSU and examined by R.N.'s Barter and Hildebrand. Immediately Boyd was under attack by both nurses. While comparing both of Boyd's knees Barter stated sarcastically, "Wow, so did the swelling just magically disappear..? I just don't believe that you fell again; you did not report it to the C.O." Plaintiff Boyd explained that last night his knee was extremely swollen - he placed a cold compress on it and that morning the swelling had went away but the pain was still intense. At this point is when R.N. Hildebrand chimed in stating verbatim: "Well, we just think you are being less than honest with us." In anger Boyd asked were the two of them accusing him of lying? Boyd was instructed to leave the examination room without treatment. Once in the hallway Boyd placed the C.O. on notice that the nurses especially R.N. Barter had called him a lier and that he did not appreciate it. Boyd also informed the SGT. at main control at HSU what had just occurred in the examination room. See: HSR dated 12/28/19; EX. 10.

30.) On December 28, 2019 Plaintiff Boyd forwarded a Medication/ Medical Supply Refill Request to HSU requesting among other supplies, acetaminophen to help manage his pain in which was prescribed by the E.R. doctor however; Boyd's request was denied causing Boyd to suffer through the pain without any aid. See: Medication refill request dated 12/28/19; EX. 11. It should be noted that on December 27, 2019 following Boyd's examination by R.N.'s Barter and Hildebrand, his regular provider (Burnett), permitted Boyd a lower bunk restriction to help assist/accommodate Boyd's arm condition - Burnett took the appropriate action.

31.) On December 30, 2019 Plaintiff Boyd forwarded another HSR to HSU concerning knee pain resulting from second fall. See: HSR dated 12/30/

-8-

19; EX. 12.

32.) On January 3, 2020 Plaintiff Boyd forwarded another HSR to HSU reminding them that he continued to suffer lower back pain from fall; pain and loss of strenght in his right arm and hand. See: HSR dated 1/3/2020; EX. 13.

33.) On January 7, 2020 Plaintiff Boyd forwarded another Medication / Medical Supply Refill Request to HSU requesting his acetaminophen be filled however; the request was denied. This caused Boyd to endure unnecesary pain and suffering. See: Medication / Medical Supply Refill Request dated 1/7/2020; EX. 14.

34.) On January 13, 2020 Plaintiff Boyd forwarded another HSR to HSU explaining that he continued to experience lower back pain from fall(s), as well as loss of strenght in right arm and hand. See: HSR dated 1/13/2020; EX. 15. (It should be noted that each time Boyd had contact with medical staff concerning his arm pain/mobility issue; he explicitly requested to be temporarily placed on a lower bunk however, Boyd's requests were simply ignored.)

35.) Due to the various staff misconduct addressed herein; Plaintiff Boyd has suffered not only physical pain and injuries but psychological injuries as well and he continues to suffer and be subjected to retaliation.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

36.) Plaintiff Boyd has properly exhausted his administrative remedies as to all claims, by timely filing and then appealing to the CCE in Madison. See: Grievances filed by Plaintiff and all responses; EX. 16.

## ARGUMENT

37.) "A prison medical employee's knowledge of the heightened risk of harm and failure to prevent that harm qualified as deliberate indifference." See: Palmer v. Franz, 928 F.3d 560 (7th Cir. 2019).
The Seventh Circuit has agreed that failure to provide medical accomodation is deliberate indifference...In this particular case (lower bunk pass).
It is Plaintiff Boyd's contention that because staff was aware of heightened risk of him falling from top bunk due to his injured arm,

they each acted with deliberate indifference by declining to take steps to mitigate that risk.

**CLAIM-1:** On December 12, 2019 Plaintiff Boyd informed R.N. D. Bellin of complications from flu-shot; pain, and loss of full mobility in right arm and hand. Boyd believes her failure to ensure he was provided proper accommodation i.e., (lower bunk pass), constitutes negligence and Eighth Amendment deliberate indifference.

**CLAIM-2:** On December 13, 2019 Plaintiff Boyd informed C.O. Ms. K, of complications from flu-shot; pain, and loss of full mobility in right arm and hand. Boyd believes her failure to contact HSU on his behalf or send him to HSU for treatment, constitutes negligence and Eighth Amendment deliberate indifference.

**CLAIM-3:** On December 14, 2019 Plaintiff Boyd informed supervisor Tom Larson, of complications from flu-shot; pain, and loss of full mobility in right arm and hand. Boyd believes Larson's failure to ensure he received medical treatment that night i.e., (sent to local hospital/ E.R.), constitutes negligence and Eighth Amendment deliberate indifference.

**CLAIM-4:** On December 15, 2019 Plaintiff Boyd was examined by a male John Doe nurse and R.N. Barter. Boyd informed these nurses of complications from flu-shot; pain, and loss of full mobility in right arm and hand. Boyd believes these defendant's failure to ensure he was provided proper accommodation i.e., (lower bunk pass); constitutes negligence and Eighth Amendment deliberate indifference.

**CLAIM-5:** Between the dates of December 16, 2019 and December 18, 2019 Plaintiff Boyd was examined by R.N. J. Garcia. Boyd informed her of complications from flu-shot; pain, and loss of full mobility in right

-10-

arm and hand. Although Garcia assisted Boyd with a sling, Boyd believes Garcia's failure to ensure he was provided proper accommodation i.e., (lower bunk pass); constitutes negligence and Eighth Amendment deliberate indifference.

**CLAIM-6:** On December 20, 2019 after returning from E.R. due to initial fall from bunk, Boyd informed both R.N. Klenke and DR. Labby of complications from flu-shot; pain, loss of "all" mobility in right arm and hand...In addition to neck and lower back pain. Boyd believes these medical professional's failure to ensure Boyd was provided proper accommodation i.e., (lower bunk pass); constitutes negligence and Eighth Amendment deliberate indifference.

**CLAIM-7:** On December 27, 2019 Plaintiff Boyd was examined by R.N.'s Barter and Hildebrand; due to a second fall resulting in an injured right knee. Boyd informed both of these nurses that the previous night he struck his knee against a metal bed ladder. Boyd explained that the previous night his knee was extremely swollen and that he currently was experiencing pain in knee whenever he walked and especially when he climbed the stairs where his room was located. Boyd believes due to the fact these medical professionals refused to treat him; called him a lier, and confiscated his sling constitutes negligence and Eighth Amendment deliberate indifference.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, IVAN BOYD, request that the court grant the following:

    A. A declaratory judgement stating that defendants violated Plaintiff's rights under U.S. Constitution.

    B. To order appointment of counsel.

    C. Award compensatory damages, individually and collectively.

    D. Award punitive damages, individually and collectively.

E.  Award court cost and fees.

F.  Grant a jury trial (of no less than 12).

G.  Waive any up-front filing fees allowing Plaintiff to proceed (informa pauperis) persuant to **28 U.S.C § 1915.**

H.  Grant any and all other relief this court determines appropriate.

DATED THIS 4th DAY OF _February_ ,2020.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the facts stated herein are true and correct and based on personal observations and direct knowledge.

State of Wisconsin
County of Waushara
Subscribed and sworn to before me this
4th day of February, 2020
Elizabeth Mills
Elizabeth Mills, Notary Public
EXPIRATION DATE 2-1-21

RESPECTFULLY SUBMITTED,

MR. IVAN BOYD(#253567)
RGCI
P.O. BOX 925
Redgranite, WI 54970
- PRO SE LITIGATION -